IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. TERRY CRONKITE, )<br>)<br>Plaintiff, )<br>)<br>v.                                                          )<br>)<br>1. STATE OF OKLAHOMA, ex rel,      )<br>   OKLAHOMA ATTORNEY GENERAL, )<br>)<br>)<br>Defendants.                          ) | Case No. CIV-20-250-G |

## PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR SURREPLY

Plaintiff, Terry Cronkite, offers the following reply in support of his Motion for Surreply with Authority [Dkt. 101].

"[T]he nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005)(citing *Beaird v. Seagate Tech., Inc*., 145 F.3d 1159, 1164 (10th Cir. 1998)). New "'Material, for purposes of this framework, includes both new evidence and new legal arguments." *Id*., quoting *Doebele v. Sprint/United Mgmt. Co*., 342 F.3d 1117, 1139 n.13 (10th Cir. 2003).

Defendant fundamentally misunderstands the definition of "new material", conflating this with challenged claims. For instance, Defendant argues that its "objection to snippets of the medical records" is not "new argument" because Defendant argued in its motion for summary judgment Plaintiff could not show a disability under the ADA. Resp, Dkt. 103, p. 2. But Defendant concedes that it did not make the legal argument that Plaintiff's evidence was inadmissible until filing the Reply brief. In addition to being a

1

new matter, this is a request for affirmative relief which ordinarily should be presented via a separate motion to strike as to which Plaintiff would be allowed a response. Evidence "that does not measure up to the standards of Rule 56(e) is subject to a motion to strike; and formal defects are waived in the absence of a motion or other objection." *Noblett v. General Elec. Credit Corp.,* 400 F.2d 442, 445 (10th Cir.1968) *cert. denied* 393 U.S. 935. While Defendant has objected to the evidence, Defendant has *not* filed a motion to strike the evidence which is contrary to the local rules of this Court. *See Persky v. Dolgencorp, Inc.,* 2008 U.S. Dist. LEXIS 13905, * 14 n. 6 (W.D. Okla. Feb. 25, 2008) (Cauthron, J.) ("To the extent Plaintiff seeks to strike Defendants' evidence on this issue her argument fails for two reasons. First, Plaintiff's challenge is raised only in a footnote in her Response to Defendants' Motion for Summary Judgment. LCvR 7.1(c) requires each motion to be filed as a separate document."). "Rules of practice adopted by the United States District Courts, as the one with which we are here concerned, have the force and effect of law, and are binding upon the parties and the court which promulgated them . . . ." *Woods Const. Co. v. Atlas Chem. Indus., Inc.*, 337 F.2d 888, 890 (10th Cir. 1964). Thus, Defendant should be deemed to have waived its objection by not following the local rules and filing a separate motion to strike. To the extent that this Court were to consider Defendant's objections, Plaintiff must be allowed to file a surreply to address the objection as this is an essential component of due process in every context. *Cf. Nelson v. Adams United States*, 529 U.S. 460, 466 (2000) ("This opportunity to respond [is] fundamental to due process. . .) and *Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The essential requirements of due process … are notice and an opportunity to respond."), *inter alia*. Defendant has

not filed a motion to strike the challenged evidence (medical records, Dr. Sherlag's notes) and not until the reply did it assert evidentiary objections to the evidence and treatise. Such a motion was required and would have allowed Plaintiff the opportunity to separately respond. Plaintiff should not be deprived of this opportunity because Defendant attempts to back-door its evidentiary objections by asserting them only in the Reply.

If given leave, Plaintiff would explain that Defendant waived its hearsay objection to Dr. Scherlag's letter by relying on it in Defendant's own case. Dkt. 85, p. 17 (Defednant claiming Scherlag's statement that Plaintiff could "return to work in 2009 with no physical restrictions", undermines the disability claim), *inter alia*.; Dkt. 66 and 66-1 (attaching Dr. Scherlag's letter as exhibit 1 to Defendant's own Motion for Summary Judgment (Dkt. 66), and Dkt. 62 (listing Dr. Scherlag's letter as an exhibit in Defendant's Final Exhibit List, Ex No. 24). *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 999-1000 (10th Cir. 2019)("[D]efendants waived any objections to the admissibility of the reports by offering them themselves."). Similarly, the contents of the medical records may be considered on summary judgment because at this stage, "evidence need not be submitted in a form that would be admissible at trial,' but 'the content or substance of the evidence must be admissible.' *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006)". *Tesone*, 942 F.3d at 999-1000. In *Tesone* they addressed a district court's refusal to consider medical records offered on summary judgment. *Id*. The Tenth Circuit cited to *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005), which the district court relied upon, and which explained that before excluding evidence the court should allow the party proffering such evidence to obtain a declaration establishing a hearsay

3

objection. *Id*. Plaintiff relies on medical records from the Oklahoma Heart Hospital where he was treated by Dr. Michael Scherlag and Dr. Mark Bodenhamer. Plaintiff has identified both witnesses in Plaintiff's Expert Witness List [Dkt 37] and intends to call such witnesses at trial to authenticate the medical records. *See, e.g., Graham v. Sheriff of Logan Cty.*, No. CIV-10-1048-F, 2012 U.S. Dist. LEXIS 189549, at *17-18 n.3 (W.D. Okla. Nov. 1, 2012)(rejecting hearsay objection to medical records because "the evidence from the medial records may be considered as the content would be admissible. *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1203, n. 1 (10th Cir. 2000)."). Thus, it will be possible to put the information, the substance or content of the evidence, into an admissible form. Plaintiff is also attempting to obtain a declaration showing the medical records are subject to a hearsay exception. *Tesone*, 942 F.3d at 1000; *Rippenkroeger v. Stillwater Cent. R.R. Co.*, No. CIV-08-1148-F, 2009 U.S. Dist. LEXIS 140313, at *4-5 (W.D. Okla. Dec. 22, 2009)("defendant should also be given an opportunity to show through a supplemental affidavit that Exhibit 3 falls within an exception to the hearsay rule."). Thus, the medical records should be considered or, at the least, Plaintiff should be allowed to show they fall within a hearsay exception. Finally, The Merck Manual is not being offered to prove the truth of the matter asserted, FRE 801, but to show the Court may take judicial notice that Plaintiff's heart conditions are capable of substantially limiting the major life activities of heart function if left untreated. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 522 (11th Cir. 1996)(Taking "judicial notice that Graves' disease is . . . capable of substantially limiting major life activities if left untreated" because that fact "is not subject to reasonable dispute, and it is 'capable of accurate and ready determination by resort to sources whose accuracy

cannot be reasonable questioned'". *Id*., citing FRE 201(b)(2) and The Merck Manual of Diagnosis and Therapy. Thus, Plaintiff should be allowed to respond to Defendant's evidentiary objections.

Similarly, Defendant's claim that Plaintiff has "twisted OAG's responses" is a new legal argument.  Defendant is arguing that viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff is somehow improper "twisting".  Defendant did not make this argument in its initial motion.  Defendant was asked to admit or deny that Plaintiff told Defendant that he suffered from a heart condition. Defendant denied that Plaintiff told Defendant he suffered from a heart condition. Defendant asks the court to weigh the evidence, and draw inferences, in Defendant's favor by crediting Defendant's *counsel's*[1] explanation for falsely denying that Plaintiff disclosed his heart condition.  Reply, p. 98 (claiming for the first time that Defendant denied RFA4 "because it did not specify who the Plaintiff spoke with or the type of condition".[2]  But by viewing the evidence and drawing all reasonable inferences therefrom *in the light most favorable to Plaintiff* – which the Court must do on summary judgment – a reasonable jury could find that Defendant lied about Plaintiff disclosing his heart condition to cover up a

---

[1] Defendant did not make this claim in the responses, and did not cite to the record to support the reason for Defendant's false denial. *See DeVargas v. Mason & Hanger-Silas Mason Co*., 1986 U.S. Dist. LEXIS 26989, *17 (D.N.M. 1986)("Although counsel for defendants argue that defendants reasonably relied on IMD 6102 in denying employment to the plaintiff, the arguments of counsel are not evidence.").

[2] Defendant's new argument that Plaintiff's failure to "specify 'heart condition'" "carries significant weight in an ADA case" is nonsensical, legally unsupported and meritless.  See fn1.

5

discriminatory motive. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)(Court must "view facts in the light most favorable to [Plaintiff] and draw all reasonable inferences in their favor".) In other words, the court may not credit Defendant's explanation as to why it denied Plaintiff disclosed his heart condition. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014)(Court "'must disregard all evidence favorable to the moving party that the jury is not required to believe.' *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)").

The same is true of Defendant's shift in position in its Reply, now abandoning its previously asserted reasons for termination. Compare Def's Mtn (claiming termination *only* "because he refused to accept the position and based on his attitude and communication regarding his decision" [Dkt. 66 p. 2, 11, *inter alia*] with Def's Resp. Int. No. 1, Dkt. 86-8, ECF pp. 6-7:

> **INTERROGATORY NO. 1:** Set out fully each 'reason for termination' . . .
> **RESPONSE NO. 1:** . . . OAG states that . . . Plaintiff took steps to commit the OAG to providing an agent to staff the position prior to consulting with his supervisors . . . It appeared Plaintiff was unilaterally taking steps to staff the position with OAG employee, Brent Locke. . . .

Defendant concedes the reasons are facially different, but claims that Int. No. 1 is "a narrative of the events leading up to Plaintiff's termination – which is what the interrogatory requested". Dkt. 103, p. 3. Defendant's explanation in its opposition brief is yet another shift in explanation as Defendant has never before said that its response to Int. No. 1 contained anything other than the reasons for termination. Defendant's response never stated that the references to Locke and other reasons were only "a narrative of events

leading up to Plaintiff's termination". Dkt. 86-8, ECF pp. 6-8. Nor does Int. No. 1 ask for a background narrative. *Id.*, ECF p. 1. The request is *limited* to the reasons for termination "including the dates, places and material circumstances related to the reasons and identifying the parties to each communication". *Id.* By crediting Defendant's post-hoc excuse, the Court would be weighing evidence and making inferences in favor of the moving party, and resolving conflicting evidence (and explanations) in favor of the moving party. But in viewing the evidence and making inferences in favor of the *non-moving* party, a reasonable jury could make several critical inferences in Plaintiff's favor. First, a reasonable jury could find that Defendant's reference to Plaintiff's communication with Locke was a new reason because it was not given at the time of termination. *See Payan v. UPS*, 792 F. App'x 634, 645 (10th Cir. 2019):

> A plaintiff can establish pretext by showing that an employer was "inconsistent in the reasons it provided for the [employment decision]." *Whittington v. Nordam Grp., Inc.*, 429 F.3d 986, 994 (10th Cir. 2005); *see also Plotke v. White*, 405 F.3d 1092, 1104 (10th Cir. 2005) (holding that "the conflicting evidence regarding the reasons [an employer] decided to fire [an employee] raise credibility issues for the fact finder"); *Perfetti v. First Nat'l Bank of Chi.*, 950 F.2d 449, 456 (7th Cir. 1991) (finding of pretext warranted "[i]f at the time of the adverse employment decision the decision-maker gave one reason, but at the time of the trial gave a different reason which was unsupported by the documentary evidence"). "Such inconsistencies include abandoning explanations that the employer previously asserted." *Fassbender*, 890 F.3d at 887.

Also *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1380-81 (10th Cir. 1994)(explanation changed from "budgetary constraints" to plaintiff's "inability to have a cohesive faculty"). After all, a reasonable jury could question why Defendant did not state that its reference to Locke was only background narrative if it were true at the time the response was given.

7

Second, a reasonable jury could infer that Defendant abandoned the reason on summary judgment only because the evidence in discovery contradicted its interrogatory response and because the decisionmaker testified that the only step Plaintiff took regarding Locke was to talk to him about the position, but that there was no rule or policy prohibiting him from doing so. Dkt. 86-2, Tr Cash, p. 71 ln 14 to p. 72 ln 11. See *Whittington v. Nordam Group Inc*., 429 F.3d 986, 994 (10th Cir. 2005) ("Another indication of pretext is that Nordam. . . asserted rationales for Mr. Whittington's termination that were later affirmatively disclaimed. . . or abandoned in the face of contrary testimony from its own management"); *Byrnie v. Town of Cromwell Bd. of Educ*., 243 F.3d 93, 106 (2d Cir. 2001) ("A juror could believe that the latter statement was the result of an attempt to salvage an earlier explanation that was collapsing during civil discovery. . ."); *accord Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 887 (10th Cir. 2018):

> Further muddying CCS' proffered explanation for Fassbender's termination is its failure to consistently identify exactly why it terminated her. . . . a jury can reasonably infer pretext when an employer is "inconsistent in the reasons it provide[s] for the termination." *Whittington v. Nordam Grp. Inc*., 429 F.3d 986, 994 (10th Cir. 2005). Such inconsistencies include abandoning explanations that the employer previously asserted. *See id*.

Compare Def's Resp. Int. No. 1 with Dkt. 86-5, Roberts Tr., ECF p. 23, Transcript p. 127, ln 8-25 (Roberts testifying Plaintiff was terminated "[b]ecause after accepting the position on the task force on the 29th, he then had decided he did not want to do that job".). Also Dkt. 86-2, Tr Cash, ECF p.

Third, Defendant's explanation that Plaintiff was terminated for taking steps to commit Locke to the OBN position was a reason for termination (as Defendant lists in its

response to Int. No. 1) because Cash testified that the only step Plaintiff took to commit Locke was to talk to him about the position and Defendant claims Plaintiff was terminated for "[h]is refusal, and his attitude *and communications* with his supervisors *and others at OAG*". Dkt. 86-8, Def's Resp Int. No. 1, ECF p. 8 (emphasis added); Dkt 86-2, Cash Transcript at ECF pp. 17-18, Transcript p. 71 ln 14 to p. 72 ln 11 (**Q:** "What other steps, other than what you have just told me, did Mr. Cronkite do to place a different agent, other than himself, in the OBN position?" **A:** "I can't speak to Terry's steps." **Q:** "Well, any that you are aware of, any other steps other than talking to Mr. Locke that you are aware of?" **A:** "No.")

**WHEREFORE**, Plaintiff must be given the opportunity to address Defendant's new arguments and evidentiary objections.

**RESPECTFULLY SUBMITTED THIS 27th DAY OF JANUARY, 2022**.

> HAMMONS, HURST & ASSOCIATES
> s/ Amber L. Hurst
> Mark E. Hammons, OBA No. 3784
> Amber L. Hurst OBA No. 21231
> Brandon D. Roberts, OBA No. 34012
> 325 Dean A. McGee Avenue
> Oklahoma City, Oklahoma 73102
> Telephone: (405) 235-6100
> Facsimile: (405) 235-6111
> amber@hammonslaw.com
> *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

A true copy of the foregoing was filed and served by use of this Court's ECF system of filing and service to the opposing counsel below listed on this 27th day of January, 2022.

Victor F. Albert, OBA # 12069
Justin P. Grose, OBA # 31073
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
The Heritage Building
621 N Robinson Ave., Suite 40
Oklahoma City, Oklahoma 74102
Telephone: (405) 546-3755 (Vic Albert direct line)
Telephone: (405) 546-3758 (Justin Grose direct line)
Facsimile: (405) 546-3775
Victor.Albert@oletree.com
Justin.Grose@oletree.com
*Attorneys for Defendant*

                                                      s/ Amber L. Hurst