# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

---

**Case No. CIV-20-250-G**

**TERRY CRONKITE,**

**Plaintiff,**

**vs.**

**STATE OF OKLAHOMA** *ex rel.*
**OKLAHOMA ATTORNEY GENERAL,**

**Defendant.**


**DEFENDANT OKLAHOMA ATTORNEY GENERAL'S TRIAL BRIEF**

---

**Victor F. Albert, OBA #12069**
**Justin P. Grose, OBA #31073**
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
**The Heritage Building**
**621 N. Robinson Ave., Suite 400**
**Oklahoma City, OK 73102**
**Phone: (405) 546-3757**
**Fax: (405) 546-3775**
victor.albert@ogletree.com
justin.grose@ogletree.com


**ATTORNEYS FOR DEFENDANT,**
**OKLAHOMA ATTORNEY GENERAL**

---

**APRIL 6, 2022**

# **TABLE OF CONTENTS**

I.  BASIC FACTS ............................................................................................................ 1

II.  LEGAL BASIS FOR DEFENSES ............................................................................. 4

III.  ANTICIPATED EVIDENTIARY ISSUES ................................................................ 5

IV.  RULE 50 AUTHORITIES ......................................................................................... 6

    A.  Plaintiff cannot show that he is "disabled," i.e., there is no competent, admissible evidence that Plaintiff's heart condition is an "actual disability" under the Rehab Act and/or the OADA ............................................................. 7

    B.  OAG did not refuse to accommodate Plaintiff because he never asked for an accommodation in the first place. ............................................................. 10

    C.  OAG had a legitimate, nondiscriminatory, nonretaliatory reason to terminate Plaintiff ............................................................................................ 12

        1.  With respect to Plaintiff's discrimination claim under the Rehab Act, he must show that his disability is the "sole" cause for the adverse employment action ............................................................................. 15

    D.  If Plaintiff succeeds on any of his claims, his damages are very limited.... 16

        1.  Plaintiff can only seek back pay under the ADEA, not compensatory or punitive damages. ................................................................................. 16

        2.  Under the Rehab Act, Plaintiff can only seek back pay; punitive damages are not allowed, and he must make a heightened showing of intentional discrimination to seek compensatory damages. .................. 16

        3.  Under the OADA, Plaintiff is limited to backpay. ................................ 17

        4.  Because Plaintiff started making more money at a subsequent employer approximately six months after his termination, his total damages in this case are limited to $33,552 .............................................................. 17

V.  UNUSUAL ISSUES ................................................................................................. 18

VI.  CONCLUSION ........................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Barnes v. Gorman*,
   536 U.S. 181 (2002) ................................................................................ 16

*Bartee v. Michelin N. Am., Inc.*,
   374 F.3d 906 (10th Cir. 2004) .................................................................... 7

*Bruno v. Western Elec. Co.*,
   829 F.2d 957 (10th Cir. 1987) .................................................................. 16

*C.I.R. v. Schleier*,
   515 U.S. 323 (1995) ................................................................................ 16

*Carter v. Pathfinder Energy Servs., Inc.*,
   662 F.3d 1134 (10th Cir. 2011) .................................................................. 8

*In re: Cox Enters., Inc.*,
   871 F.3d 1093 (10th Cir. 2017) ............................................................... 6, 7

*Dewitt v. Sw. Bell Tel. Co.*,
   845 F.3d 1299 (10th Cir. 2017) .............................................................. 7, 10

*Doebele v. Sprint/United Management Co.*,
   342 F.3d 1117 (10th Cir. 2003) .................................................................. 9

*E.E.O.C. v. C.R. England, Inc.*,
   644 F.3d 1028 (10th Cir. 2011) ................................................................ 10

*Felkins v. City of Lakewood*,
   774 F.3d 647 (10th Cir. 2014) .................................................................... 8

*Havens v. Colo. Dep't of Corrs.*,
   897 F.3d 1250 (10th Cir. 2018) ................................................................ 17

*Lincoln v. BNSF Ry. Co.*,
   900 F.3d 1166 (10th Cir. 2018) .................................................................. 7

*Lobato v. N.M. Env't Dep't*,
   733 F.3d 1283 (10th Cir. 2013) ................................................................ 13

*Lounds v. Lincare, Inc.*,
   812 F.3d 1208 (10th Cir. 2015) ................................................................ 12

*Marsh v. Terra Intern. (Oklahoma), Inc.*
  122 F.Supp.3d 1267, 1281–82 (N.D. Okla. 2015) ...................................................... 9

*Natofsky v. City of New York,*
  921 F.3d 337 (2d Cir. 2019) ...................................................................................... 15

*Neri v. Bd. of Educ. Albuquerque Pub. Schs.,*
  860 F. App'x 556 (10th Cir. 2021) .............................................................................. 8

*Peebles v. Potter,*
  354 F.3d 761 (8th Cir. 2004) .................................................................................... 15

*Powers v. MJB Acquisition Corp.,*
  184 F.3d 1147 (10th Cir. 1999) ................................................................................ 17

*Rakity v. Dillon Companies, Inc.,*
  302 F.3d 1152 (10th Cir. 2002) .................................................................................. 9

*Riggs v. AirTran Airways, Inc.,*
  497 F.3d 1108 (10th Cir. 2007) ................................................................................ 12

*Snyder v. Bd. of Regents for Agricultural & Mechanical Colleges,*
  No. CIV-16-384-F, 2020 WL 827412 (W.D. Okla. Feb. 19, 2020) ........................... 16

*Soledad v. U.S. Dep't of Treasury,*
  304 F.3d 500 (5th Cir. 2002) .................................................................................... 15

*St. Mary's Honor Ctr. v. Hicks,*
  509 U.S. 502 (1993) .................................................................................................. 12

*Villescas v. Abraham,*
  311 F.3d 1253 (10th Cir. 2002) ................................................................................ 16

*Young v. Dillon Cos., Inc.,*
  468 F.3d 1243 (10th Cir. 2006) ................................................................................ 13

*Zisumbo v. Ogden Reg'l Med. Ctr.,*
  801 F.3d 1185 (10th Cir. 2015) .................................................................................. 7

*Zwygart v. Bd. of Cnty. Comm'rs of Jefferson Cnty.,*
  483 F.3d 1086 (10th Cir. 2007) ............................................................................. 9, 13

**Statutes**

29 U.S.C. § 794(a) ....................................................................................................... 15, 17

42 U.S.C. § 12102(1)(A)–(C) ................................................................. 8

ADA ............................................................................................. 10, 15, 16

Age Discrimination in Employment Act ................................... 5, 12, 16

Oklahoma Anti-Discrimination Act ...........................................*passim*

Okla. Stat. tit. 25, § 1350(G) ............................................................. 17

Rehabilitation Act ......................................................................*passim*

**Other Authorities**

29 C.F.R. § 1630.2(h)–(j) .................................................................... 8

Fed. R. Civ. P. 26(a)(2) ...................................................................... 6

Fed. R. Evid. 401, 403, 702, 703, 801, 802 ...................................... 6

Rule 50(a) ............................................................................................ 6

Rule 56(c) ............................................................................................ 6

Defendant Oklahoma Attorney General ("OAG"), pursuant to the Court's Amended Scheduling Order [Doc. No 109], respectfully submits its Trial Brief.

## I. **BASIC FACTS**

Plaintiff was employed by OAG from 2014 through February 15, 2019. His last job position was as Chief Investigator. In early 2019, in order to help fight the opioid epidemic, which OAG had already made a top priority, the Oklahoma Bureau of Narcotics ("OBN") created an Opioid Task Force. At the time OAG learned of the position in January 2019, the position did not have any well-defined job duties because the persons who would be selected for the OBN Task Force had not met to discuss the details of the OBN Task Force and the division of responsibilities.

On January 8, 2019, John Scully—then-Director of OBN—reached out to Dawn Cash—the then-First Assistant Attorney General—with OAG to inform her about the OBN Task Force and he provided to Cash the Memorandum of Understanding ("MOU") that would govern the OBN Task Force. Previously, on January 4, 2019, Scully indicated that Plaintiff was "working on his end to identify a fitting investigator for us." At some point in January 2019, Plaintiff identified Brent Locke, another OAG agent, for the OBN position, but Plaintiff did not consult his superiors prior to doing so. At the time, his superiors were Cash and Mary Ann Roberts (the newly-hired Chief Deputy Attorney General). Plaintiff later relayed his decision to Cash and Roberts, telling them that the OBN position was intended to be a supervisory position. He also mentioned that the position came with a car, would allow for overtime, and involved significant, important work. Plaintiff also considered Douglas Samuel and Roland Garrett for the position, who are 60 and 50–54 years old, respectively, but he did

not proceed further due to their lack of prior law enforcement experience on drug-related issues.

The MOU stated that factors to be considered when selecting an agent for the OBN Task Force were: "educational background, demeanor, work history, work ethic, any prior drug-crime investigative experience, courtroom testimony skills, and ability to properly handle sensitive or confidential information." The OBN Task Force would consist of "OBN[] agents, state and/or local investigators, and an OBN[] analyst." Plaintiff understood there would be six people on the OBN Task Force including a supervisor, who had not been designated yet.

Because Locke was working in the Medicaid Fraud Control Unit, for which his salary was primarily grant-funded with federal funding, he could not be easily moved to the OBN position because it would put the OAG office in a financial disadvantage and bind. Due to there being an immediate need to fill the OBN Task Force Position because of a March 1, 2019 deadline from OBN, Cash made the decision to staff Plaintiff in that role. Because of the time crunch and because Plaintiff had already described the position as a great opportunity, Cash believed Plaintiff to be the obvious choice for the position.

Cash and Roberts met with Plaintiff on January 29, 2019, to discuss the OBN position and told Plaintiff that they were selecting him for the position. When OAG selected Plaintiff for the position, OAG believed that it would be a supervisory position, and Plaintiff did not know what the position actually entailed. They discussed the position and that it was a good assignment, and Plaintiff responded that he agreed to their decision by saying "okay" or words to that effect and nodding his approval of accepting the job position at OBN.

Plaintiff did not mention anything about his alleged health conditions during the January 29, 2021 meeting. The first week in February 2019, Plaintiff presented OAG with a doctor's letter attesting to the facts that his heart conditions since 2009 were "medically managed" and that he had been released to return to work "with no restrictions," but alluding vaguely to a possibility that the new job position "may require more physically demanding challenges which may stress and aggravate his Coronary Artery Disease and hypertension." The 2009 medical condition in the letter predates his 2014 beginning of employment with OAG. Thus, Plaintiff had the medical condition throughout his employment with OAG and never felt the need to seek an accommodation of any type.

But, at the time, Plaintiff solicited the letter from his doctor, he spoke to a nurse and he did not provide the doctor's office with any details about the OBN Task Force position. Importantly, at this time, neither Plaintiff nor his doctor identified any certain limitations on his alleged physical restrictions, ability to do the essential functions of the job, or any reasonable accommodations that could be made with the new job—because no one yet knew what those job duties would be. Without knowing anything about the physical requirements and the essential functions of the new job position on the OBN Task Force, and after OAG already assigned him to staff it, Plaintiff changed his mind and refused to take it and advised OAG it would have to fire him.

Around this time, Cash learned that Plaintiff had packed up his office possessions into boxes, which she interpreted as he was going to the OBN offices to fulfill the commitment on the OBN Task Force. At no time did Plaintiff seek to stay in his position as Chief Investigator—he told Cash, "I figure when I turn this down, I'm out of here, but, I mean, I

don't want to resign, you know. If you want me out of here, fire me, but that's – I'm not going to resign." During this meeting Cash observed Plaintiff's body language to be borderline defiant and belligerent. Roberts described Plaintiff's behavior as aggressive and angry. Cash understood from Plaintiff's words and actions that he "won't go to the position we have committed to; you'll have to fire me," not that he "can't" go because of an actual medical condition that prevented such since she viewed the job position at the OBN Task Force as parallel to the job position that he had been doing at OAG in terms of physical requirements. Plaintiff's refusal to take the OBN position (after accepting it) and his attitude and communication with his supervisors about it were the basis of the decision to terminate his employment.

The testimony and evidence to be presented at trial will clearly show that the legitimate non-discriminatory reason for the job separation was Plaintiff's refusal to take the OBN position (after he had already agreed to do so). Judgment as a matter of law in favor of OAG will be warranted because Plaintiff's termination was not based on his alleged disability, age, or any retaliatory motive—it was due to insubordination. Plaintiff's evidence cannot overcome OAG's legitimate reasons for the termination.

## II. <u>LEGAL BASIS FOR DEFENSES</u>

Plaintiff, who never made known to OAG that he had a medical condition, much less anything that was a disability, prior to OAG reassigning him to OBN, submitted one vague letter to Roberts and Cash that briefly mentioned a heart condition that was medically managed and did not cause him any restrictions. Although Plaintiff admittedly did not know what job duties the position on the OBN Opioid Task Force entailed, he *believed* that the job

duties were somehow restrictive to his alleged health condition. Below is a short summary of OAG's defenses:

- Discrimination (disability and age) under the Rehabilitation Act ("Rehab Act"), the Age Discrimination in Employment Act ("ADEA"), and the Oklahoma Anti-Discrimination Act ("OADA"): (1) Plaintiff cannot show that he had a "disability"; (2) OAG had the legitimate, nondiscriminatory reason to terminate Plaintiff when he refused the OBN Task Force position that he previously agreed to take, which had nothing to do with his alleged disability or his age.

- Failure to accommodate under the Rehab Act and the OADA: Plaintiff did not request an accommodation.

- Retaliation under the Rehab Act and the OADA: Plaintiff's alleged request for accommodation (that he did not make) had nothing to do with his termination. OAG had  legitimate, nonretaliatory reasons to terminate him when he refused the OBN Task Force position that he previously agreed to take.

### III.  ANTICIPATED EVIDENTIARY ISSUES

*Plaintiff's Medical Records*

While employed by OAG, Plaintiff admits that the only documentation regarding an alleged medical condition submitted by him to OAG is the vague letter from Dr. Michael Scherlag dated February 5, 2019. No other medical records or medical documentation were submitted to OAG at that time or any other time in 2019.

During discovery in this case, OAG initially sought to obtain Plaintiff's medical records via an authorized HIPAA release form. In his Discovery Responses on September 25,

2020, Plaintiff's attorneys refused to provide the authorization. Then, over a year later, and *after* OAG took Plaintiff's deposition, Plaintiff produced 267 pages of Plaintiff's medical records on November 19, 2021. (The records show that they were printed in September 2020 by Plaintiff's medical provider.) These records were never presented to OAG during Plaintiff's employment.

All of these medical records are inadmissible due to the fact that they were not presented to OAG when Plaintiff was employed, they were not produced to OAG for its benefit and use in discovery, and some of the records post-date Plaintiff's termination. For these reasons, OAG objects to their mention or use under Fed. R. Evid. 401, 403, 702, 703, 801, 802, as well as Fed. R. Civ. P. 26(a)(2) for their late disclosure.

## IV.  <u>RULE 50 AUTHORITIES</u>

Rule 50(a) provides:

**(a) Judgment as a Matter of Law.**

> **(1) *In General.*** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> > **(A)** resolve the issue against the party; and
> >
> > **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a). "The standard of review for Rule 50 motions 'mirrors the standard' for summary-judgment motions under Rule 56(c)." *In re: Cox Enters., Inc.*, 871 F.3d 1093, 1096 (10th Cir. 2017). "Judgment as a matter of law is appropriate only if the evidence points but

one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." *Id.* "In other words, judgment as a matter of law is appropriate if, construing the evidence and all inferences in the light most favorable to the nonmoving party, the court is certain the evidence conclusively favors [the moving] party such that no reasonable jury could arrive at a contrary verdict." *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1198 (10th Cir. 2015).

**A. Plaintiff cannot show that he is "disabled," i.e., there is no competent, admissible evidence that Plaintiff's heart condition is an "actual disability" under the Rehab Act and/or the OADA.**

"To present a claim of wrongful termination, [Plaintiff] must show: (1) he is disabled within the meaning of the [Rehab Act]; (2) he can perform, either with or without reasonable accommodation, the essential functions of the desired job; and (3) 'that [Defendant] terminated him because of his disability.'" *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 (10th Cir. 2004). If a plaintiff meets this prima facie case, then the burden shifts to the employer to show a "legitimate, nondiscriminatory reason" for the employment decision. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1193 (10th Cir. 2018). The burden then shifts back to the employee to show pretext. *Id.* Demonstrating discrimination requires a plaintiff to "show that he has suffered an adverse employment action because of the disability." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017) (internal quotation marks omitted). Plaintiff fails all three elements of the prima facie case.

Whether an individual has a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."

42 U.S.C. § 12102(1)(A)–(C). Under subsection A, this requires Plaintiff: (1) to show he "ha[s] a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment *substantially* limits[1] one or more of those activities." *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014) (emphasis added). Lay evidence is insufficient to establish either a recognized impairment or the limitations the impairment imposes on an individual's major life activities. *Id.* at 651. Plaintiff cannot meet any of the three definitions for "disability" as required by the Rehab Act—either at the time OAG still employed him or now. With respect to an "actual disability," at trial, the evidence will show:

- At the time OAG made the decision to transfer Plaintiff to the OBN, it did not have knowledge of Plaintiff's alleged medically-managed health conditions or any disability.

- Only after OAG made the decision regarding the OBN position did Plaintiff come forward with the letter from Dr. Scherlag—which does <u>not</u> establish that Plaintiff's alleged condition substantially limited one or more major life activities. *See* 29 C.F.R. § 1630.2(h)–(j) (defining "physical or mental impairment," "major life activities," and "substantially limits"); *see also Neri v. Bd. of Educ. Albuquerque Pub. Schs.*, 860 F. App'x 556, 559–63 (10th Cir. 2021) (describing the type of "actual disability" that requires expert testimony). In fact, just the opposite, the letter says that his conditions had been "medically managed" since 2009 "with no physical restrictions."

- Plaintiff did not present any other medical evidence to OAG.

- Plaintiff testified that *if* the OBN job was an administrative job and primarily one where he could sit at a desk, then the job would not have been in excess of his medical condition. Plaintiff certainly had a lot of experience with those types of job duties. This is exactly what Cash and Roberts believed it to be—a supervisory job.

---

[1] A substantial limitation only exists where an individual is "unable or significantly restricted in her ability to perform a major life activity compared to the average person in the general population." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1143 (10th Cir. 2011).

- At no time did Plaintiff present any evidence to the contrary that it was, in fact, not a supervisory position, other than his uncorroborated speculation.

OAG did not have a record of Plaintiff being disabled. There is no evidence OAG had a record of Plaintiff's alleged disability. In fact, the opposite is true because Plaintiff's admits that he never provided OAG with documentation regarding his health condition *prior* to February 12, 2019, which was after Cash and Roberts had already made the decision to send him to the OBN position. Courts looking at this issue consider whether any records have been identified by the plaintiff that point to a substantiated record of a disability. *See, e.g.*, *Zwygart v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 483 F.3d 1086, 1091–93 (10th Cir. 2007) (taking into account physician's notes but finding that plaintiff was not substantially disabled); *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1132 (10th Cir. 2003) (considering psychiatrist's notes but finding that plaintiff was not substantially disabled); *Rakity v. Dillon Companies, Inc.*, 302 F.3d 1152, 1159–60 (10th Cir. 2002) (looking to medical and employment documents to discern disability). And in *Marsh v. Terra Intern. (Oklahoma), Inc.*, the court found that the plaintiff could not establish a record of disability related to his knee injuries because he could not identify a concrete document that showed his disability materially restricted one or more major life activities. 122 F.Supp.3d 1267, 1281–82 (N.D. Okla. 2015). This was true even though the employee had told his employer about the knee injury and expressed concerns about it. *Id.* at 1272.

Plaintiff fails to present any competent evidence that is in in fact "actually disabled." Furthermore, the letter from Dr. Scherlag—the only medical documentation provided to OAG by Plaintiff—does not show that Plaintiff had a "record of" a disability while employed

at OAG or that OAG "regarded" him as disabled. He thus fails on all three prongs of the Rehab Act and the OADA to show that he is "disabled."

### B. OAG did not refuse to accommodate Plaintiff because he never asked for an accommodation in the first place.

When considering a reasonable accommodation, the federal regulations "envision an interactive process that requires participation by both parties." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1315 (10th Cir. 2017). "However, before an employer's duty to provide reasonable accommodations—or even to participate in the 'interactive process'—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice." *Id.* at 1315–16. "Although the notice or request 'does not have to be in writing, be made by the employee, or formally invoke the magic words "reasonable accommodation,"' it 'nonetheless must make clear that the employee wants assistance *for his or her disability*.'" *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011). <u>It must be sufficient to both put the employer on notice of the disability and the employee's need for accommodations for that disability</u>. *Id.* The facts on this issue are undisputed.

Plaintiff never made an accommodation request, much less an adequate one. Importantly, both Cash and Roberts believed the OBN Task Force position to be a supervisory position for which the physical requirements would be parallel to Plaintiff's job at OAG as Chief Investigator. During the initial meeting on January 29, 2019, when Cash told Plaintiff that he had been selected for the OBN Task Force position, he did not mention anything about his alleged health condition. After that January 29, 2019, meeting, Plaintiff contacted his doctor's office and spoke to his doctor's nurse and asked her for an updated letter on his health

condition. He did not speak directly to his doctor, and he did not provide any information to his doctor about the OBN Task Force position that would allow his doctor to determine whether he could do the essential functions of the OBN Task Force position with or without a reasonable accommodation. Other than the single letter from Dr. Scherlag, Plaintiff offered no other medical information to OAG regarding any alleged health condition.

Plaintiff's February 13, 2019, surreptitious recording reveals that multiple times in the recording Cash states that it was the first she was hearing about Plaintiff's alleged health conditions. At this point, the decision to send Plaintiff to OBN had already been made. During the meeting, Plaintiff never requested an accommodation or asked to remain in his current position as Chief Investigator. He told Cash and Roberts that he would not resign but that they would have to terminate him. Cash and Roberts did not think there was an issue with their decision to staff him in the OBN Task Force role because Plaintiff initially did not protest it and agreed to it. Additionally, they thought the OBN position was a desk job with supervisory duties similar to Plaintiff's position as Chief Investigator with OAG. Only after OAG told Plaintiff that he would be going to the OBN Task Force Position did he bring up his "medically managed" and "no restrictions" heart condition and submit the letter from Dr. Scherlag to OAG. Again, the letter does not state that he cannot do the OBN Task Force position, and it could not state that because no one even knew what role Plaintiff would have had on the OBN Task Force that had at least five other members who would staff it, none of whom had yet met to discuss and divide up the job responsibilities.

No evidence presented by Plaintiff will show that he made a plausibly reasonable request for an accommodation. In fact, he did not make a request at all. The only vague

information provided by Plaintiff to OAG showed that he had been treated for a heart condition in the past that was medically managed and left him with no restrictions.

## C. OAG had a legitimate, nondiscriminatory, nonretaliatory reason to terminate Plaintiff.

Assuming, *arguendo*, Plaintiff has established his prima facie case under the ADEA, the Rehab Act, and the OADA, OAG must then produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Tabor*, 703 F.3d at 1216–17. If the defendant carries its burden of production, the presumption of discrimination drops out of the case. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993). In reviewing the employer's legitimate, nondiscriminatory reasons, courts "do not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is *whether the employer honestly believed its reasons and acted in good faith upon them.*" *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118–19 (10th Cir. 2007) (emphasis added). "[T]he facts as they appeared to the person making the decision" are what is important, "and [courts] do not second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment." *Id.* at 1119. "Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." *Id.* "The reason for this rule is plain: [a court's] role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Id.*

Once a legitimate, nondiscriminatory reason is put forth, the plaintiff must show by a preponderance of the evidence that the given reason is pretextual. *Lounds v. Lincare, Inc.*,

812 F.3d 1208, 1234 (10th Cir. 2015). A showing of pretext is necessary for a plaintiff to survive summary judgment. *Tabor*, 703 F.3d at 1217. Pretext may be shown in a variety of ways including "whether plaintiff can show that the employer's explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination." *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006). If, however, "the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue," that is not pretext. *Id.*; *see e.g.*, *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1292–93 (10th Cir. 2013) (affirming no-pretext finding where employer believed other employees' accounts of the plaintiff's behavior).

In this case, "the issue is not whether the decision to terminate [Plaintiff] was wise, fair or correct, but whether [OAG] reasonably believed at the time of the termination that [Plaintiff was insubordinate] . . . and acted in good faith upon that belief." *Timmerman*, 483 F.3d at 1120. The plaintiff in *Timmerman*, for example, took issue with the fact that she was immediately terminated upon the company forming a reasonable belief that she had violated company policy. *Id.* at 1119–20. In her opinion the policy required progressive discipline, but it did not in fact require it. *Id.* at 1120. There, the court held that failure to implement progressive discipline is not evidence of pretext where the policy specifically allows for employer discretion in applying its policy. *Id.*

OAG made the decision to send Plaintiff to OBN in lieu of Locke, who Plaintiff previously had chosen, due to an issue with Medicaid funding and the short timeframe within which they needed to send someone to fill the position. At the time Plaintiff raised the issue

of potential health issues, the decision had already been made to send him to OBN. At no point during this process did Plaintiff request an accommodation. At no time did Plaintiff seek to stay in his position as Chief Investigator—he told Cash, "I figure when I turn this down, I'm out of here, but, I mean, I don't want to resign, you know. If you want me out of here, fire me, but that's – I'm not going to resign."

During the above meeting Cash observed Plaintiff's body language to be borderline defiant and belligerent. Roberts described Plaintiff's behavior as aggressive and angry. Cash understood from Plaintiff's words and actions that he "won't go to the position we have committed to; you'll have to fire me," not that he "can't" go because of an actual medical condition that prevented such since she viewed the job position at the OBN Task Force as parallel to the job position that he had been doing at OAG in terms of physical requirements.

Plaintiff's refusal to take the OBN position (after accepting it) and his attitude and communication with his supervisors about it were the basis of the decision to terminate his employment. He started boxing up his personal items and stated that he would have to be fired instead of going to the position that he previously accepted. OAG then terminated his position. Ultimately, OAG replaced Plaintiff with someone who is 55 years old.

The only evidence offered by Plaintiff in support of his discrimination and retaliation claims is:

- The vague letter from Dr. Scherlag that states he was previously treated for a heart condition;

- The fact that the employee who was later staffed in the job position as Chief Investigator was 55 years of age (while Plaintiff contemplated sending two

agents to the OBN Task Force position who were 60 and 50–54 years of age, respectively); and

- The temporal proximity between the date he submitted the Dr. Scherlag letter and his termination. (This fails because OAG decided to send Plaintiff to the OBN position *before* he submitted the Dr. Scherlag letter.)

Plaintiff offers no evidence that the decision-makers, Cash and Roberts, made any discriminatory statements about his alleged disability or his age. He also offers no evidence of comparators who he claims were treated differently than he.

1.      **With respect to Plaintiff's discrimination claim under the Rehab Act, he must show that his disability is the "sole" cause for the adverse employment action.**

Although the Rehab Act borrows standards from the ADA, its statutory language is different in at least one material respect—it states that an individual may not be discriminated against "*solely by reason of her or his disability.*" 29 U.S.C. § 794(a) (emphasis added); *see Peebles v. Potter*, 354 F.3d 761, 768 n.5 (8th Cir. 2004) (recognizing that the disability must be the "sole" impetus for the adverse employment action); *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 504–05 (5th Cir. 2002) (recognizing the causation standard under the Rehabilitation Act is higher than that in the ADA); Kevin F. O'Malley, et al., 3 FEDERAL JURY PRACTICE AND INSTRUCTIONS: Civil § 172.20 (6th ed. Supp. 2017). Thus, if the Court does not find that Plaintiff has met this burden at the close of his evidence, the judgment as a matter of law must be entered in OAG'S favor.

There are, however, other courts that have recently viewed this language as creating a "but-for" standard as opposed to a "sole" cause standard. *See Natofsky v. City of New York*,

921 F.3d 337, 344–50 (2d Cir. 2019) (holding that the causation standard for claims under both the Rehabilitation Act and the ADA is a "but-for" standard); *Snyder v. Bd. of Regents for Agricultural & Mechanical Colleges*, No. CIV-16-384-F, 2020 WL 827412, at *41 (W.D. Okla. Feb. 19, 2020) (same).

The language of the statute is clear in that it requires discrimination to be the "sole impetus" for the defendant's adverse action.

**D. If Plaintiff succeeds on any of his claims, his damages are very limited.**

It is important to note that the variety of damages that Plaintiff can seek. Below is a brief outline of the limitations on the damages that he can seek:

**1.    Plaintiff can only seek back pay under the ADEA, not compensatory or punitive damages.**

Compensatory damages for pain and suffering or emotional distress are not available under the ADEA. *C.I.R. v. Schleier*, 515 U.S. 323, 326 (1995); *Villescas v. Abraham*, 311 F.3d 1253, 1258–59 (10th Cir. 2002). Additionally, punitive damages are not available under the ADEA. *Bruno v. Western Elec. Co.*, 829 F.2d 957, 966–67 (10th Cir. 1987).

**2.    Under the Rehab Act, Plaintiff can only seek back pay; punitive damages are not allowed, and he must make a heightened showing of intentional discrimination to seek compensatory damages.**

Punitive damages are not allowed under the Rehab Act. *Barnes v. Gorman*, 536 U.S. 181, 188–90 (2002).

If Plaintiff seeks compensatory damages, then he is required to make a higher showing of intentional discrimination under the Rehab Act. The Rehab Act provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 C.F.R. § 794(a). Under the Rehab Act, in order to seek compensatory damages from the jury, Plaintiff must show: "the defendant has intentionally discriminated against the plaintiff. Further, intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152–53 (10th Cir. 1999); *see also Havens v. Colo. Dep't of Corrs.*, 897 F.3d 1250, 1263–65 (10th Cir. 2018). Failure to instruct the jury on this is reversible error. *Powers*, 184 F.3d at 1153–54.

### 3. Under the OADA, Plaintiff is limited to backpay.

Aside from equitable remedies, Plaintiff can only seek "backpay" under the OADA. Okla. Stat. tit. 25, § 1350(G).

### 4. Because Plaintiff started making more money at a subsequent employer approximately six months after his termination, his total damages in this case are limited to $33,552.

While there is no evidence that will support a finding in Plaintiff's favor on any of his claims, should a jury decide otherwise, his total damages are limited to $33,552. In his Initial Disclosures, he indicated that he obtained new employment with the Oklahoma State Bureau of Investigation by August 13, 2019, and in that role he is making more money. Plaintiff's damages are thus limited to back pay only because, as outlined above, his claims do not allow for compensatory damages or punitive damages.

## V.  <u>UNUSUAL ISSUES</u>

None at this time.

## VI.  <u>CONCLUSION</u>

Based on the evidence to be presented at trial, Plaintiff will not meet his burden under Rule 50, and OAG will request the Court to dismiss Plaintiff's claims. Furthermore, there are evidentiary rulings and issues regarding the alleged damages that the Court's rulings will be necessary in order to prevent error in the presentation of the evidence.

Respectfully submitted,

/s/ Victor F. Albert
Victor F. Albert, OBA #12069
Justin P. Grose, OBA #31073
OGLETREE, DEAKINS, NASH, SMOAK &
    STEWART, P.C.
The Heritage Building
621 N. Robinson Ave., Ste. 400
Oklahoma City, OK 73102
Telephone:   (405) 546-3755
Facsimile:    (405) 546-3775
victor.albert@ogletree.com
justin.grose@ogletre.com
***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of April 2022, I electronically transmitted the foregoing to the Clerk of Court using the ECF system for electronic filing. The Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Mark Hammons
Amber Hurst
Brandon D. Roberts
HAMMONS, HURST, & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, OK 73102
amber@hammonslaw.com
brandon@hammonslaw.com
***Attorneys for Plaintiff***

/s/ Victor F. Albert
Victor F. Albert