**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. TERRY CRONKITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-20-250-G |
| | ) | |
| 1. STATE OF OKLAHOMA, ex rel, | ) | |
| OKLAHOMA ATTORNEY GENERAL, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S TRIAL BRIEF

The Plaintiff, Terry Cronkite, offers the following response to Defendant's Trial Brief:

## I - INTRODUCTION

The Plaintiff, Terry Cronkite (hereinafter "Cronkite") worked for Defendant as the Chief Investigator until he was involuntarily terminated by Dawn Cash. According to Dawn Cash, Mr. Cronkite was qualified and "performing very well" in the Chief Investigator role. Yet, in January 2019 Dawn Cash unilaterally assigned Cronkite to a new position, that of a drug agent assigned to work on a task force with the Oklahoma Bureau of Narcotics (OBN position).

Cronkite, believing the job would require much more activity and late hours, explained that he did not believe he could perform the OBN position with his heart condition, which included a prior heart attack and severe coronary artery disease. Mr. Cronkite asked his immediate supervisor, Mary Ann Roberts, if he could remain in his Chief Investigator position because of his heart condition. Ms. Roberts told Ms. Cash about Cronkite's heart condition and request to remain in the Chief Investigator position. Plaintiff also requested the ability not to go to the OBN position because of his heart conditions. Cronkite brought a letter from

1

his doctor explaining his medical condition.  The letter was given to Ms. Roberts and Ms. Cash.

Cash ignored Plaintiff's requests, wholly refused to engage in an interactive process to find a reasonable accommodation, and instead terminated Plaintiff's employment.  Cash claims she fired Plaintiff for refusing to go to the OBN position, but admits the reason Cronkite gave for not wanting to go to that position was his heart condition.  Cash admitted that the Chief Investigator position remained open and Plaintiff could have remained in that position if Cash allowed.  Defendant replaced Plaintiff with someone at least ten years younger who did not have similar heart conditions.

Plaintiff brings claims for failure to accommodate, and wrongful termination based on disability, age and in retaliation for requesting accommodations.

## II – DEFENDANT'S "FACTS" AND LEGAL ARGUMENTS

Defendant takes the "kitchen sink" or "see what sticks" approach to its Trial Brief. Defendant spends more than eight pages regurgitating its summary judgment motion without citation to the evidentiary record,[1] and makes spurious arguments without citation to legal authority.[2]

---

[1] The argument of Defendant's counsel is not evidence. *Pinkerton v. Colo. DOT*, 563 F.3d 1052, 1061 (10th Cir. 2009)("'[T]he argument of counsel is not evidence, and cannot provide a proper basis to [grant or] deny summary judgment.'"); *accord Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1236 (10th Cir. Colo. 2008):

> Wal-Mart asserts, in its pleadings, that Justice's PPH reflects that he "experienced only one prospective base hour reduction," . . . But Wal-Mart points to no evidence to support its explanation. *See* generally 10A Wright, Miller, & Kane, supra, § 2723 (noting counsel's assertions in briefs and at oral argument generally cannot provide a basis for granting summary judgment).

[2] It does not appear Defendant gave significant thought to what to include in its trial brief.  In addition to merely regurgitating prior briefing, Defendant makes arguments directed at the

2

For instance, Defendant argues that "Plaintiff offers no evidence that the decision-makers . . . made any discriminatory statements" and that Plaintiff "also offers no evidence of comparators who he claims were treated differently than he". Trial Brief, p. 15.   To the extent Defendant intends to argue that discriminatory statements and comparator evidence is required, the arguments may not be considered as Defendant fails to support them with legal authority.   "[A] party <u>must</u> support its argument with legal authority". *Corley v. Dep't of VA*, 218 Fed. Appx. 727, 734 (10th Cir. 2007) (citing and summarizing *Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992))(underlining supplied).   "A litigant who fails to press a point by supporting it with *pertinent* authority or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him."   ***Phillips v. Hillcrest Med. Ctr.,*** 244 F.3d 790, 800 (10th Cir.2001) (emphasis supplied, alterations by the Court, quoting ***Pelfresne v. Village of Williams Bay,*** 917 F.2d 1017, 1023 (7th Cir.1990)).

Although improper, Defendant may hope that Plaintiff is forced to spend time and page length responding to each and every unsupported argument or risk of the Court adopting such arguments.   But the better approaches, more consistent with Fed.R.Civ.P.1, are for (1) a party to limit its arguments to those supported by pertinent legal authority; and (2) when the parties fail in this regard, for the Court to ignore arguments that are unsupported by the party presenting them.

---

Age Discrimination in Employment Act even though Plaintiff is <u>not</u> making a claim under the ADEA.   Trial Brief, p. 16.

## B – Rule 50(a) Argument

Defendant next sets out the argument it intends to make after Plaintiff has rested his case. Trial Brief, Prop. IV, p. 6, *et seq.* But Defendant's own motion facially shows why a Rule 50 motion should be denied. Under Fed.R.Civ.P.50, judgment as a matter of law must only be considered after "a party has been fully heard on an issue during a jury trial". Fed.R.Civ.P.50(a)(1). The standard for determining a Rule 50 motion for judgment as a matter of law is the same as determining a Rule 56 motion for summary judgment. *In re: Cox Enters., Inc.,* 871 F.3d 1093, 1096 (10ᵗʰ Cir. 2017). That is, "[j]udgment as a matter of law 'is warranted *only* if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Zisumbo v. Ogden Reg'l Med. Ctr.,* 801 F.3d 1185, 1198 (10th Cir. 2015)(emphasis supplied). The court may not "weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for those of the jury." *Zisumbo v. Ogden Reg'l Med. Ctr.,* 801 F.3d 1185, 1198 (10th Cir. 2015)(quotation marks and citations omitted).

Defendant spends nearly nine pages regurgitating its facts and argument from its summary judgment motion. See Trial Brief, p. 7-15. Defendant does not cite to the evidentiary record and Plaintiff is not required at this stage to respond to every disputed statement made by Defendant's legal counsel.[3] Plaintiff is not required to set out his entire case in response to a trial brief. Nor is Plaintiff's presentation of the evidence limited to the information contained in the trial brief. Thus, Plaintiff is not required to re-litigate the

---

[3] **Error! Main Document Only.**"[T]he argument of counsel is not evidence, and cannot provide a proper basis to deny summary judgment." ***Pinkerton v. Colo. DOT***, 563 F.3d 1052, 1061 (10th Cir. 2009)

summary judgment motion in response to Defendant's trial brief, but may rely on the evidence presented at trial to defend against a Rule 50 motion.

Plaintiff will limit his response to addressing Defendant's new and/or legally erroneous arguments.

## C – Plaintiff's Medical Records

Defendant argues that Plaintiff's medical records are inadmissible because they were not provided to the employer during Plaintiff's employment (even though Defendant never requested such records) and because the records were produced after Plaintiff's deposition (but months before the discovery deadline).  Trial Brief, p. 5-6, 9, *inter alia*.

Neither the U.S. Supreme Court or Tenth Circuit decision has held (or implied) that a plaintiff must have given every medical document to his employer before relying on such information at trial. See Fed.R.Civ.P.11(b)(1), (2).[4]   Plaintiff testified that he told Defendant about his heart condition and that this heart condition was the reason he could not perform the OBN job.  Defendant never asked Plaintiff to provide documentation.  Plaintiff voluntarily provided a doctor's note discussing his heart condition, and Defendant never claimed the note was deficient or that it needed other medical records.

Defendant's argument is frivolous and should be rejected.

---

[4] It is troubling that Defendant continues to argue that medical records not presented to the employer are *per se* inadmissible at trial. Defendant made this argument in his motion for summary judgment (Dkt. 66, p. 20) and Plaintiff pointed out the lack of supporting legal authority (Plf Resp, Dkt. 86, p. 28).  Rather than concede the argument lacks merit Defendant continues to make this meritless argument while citing other non-pertinent authority that does support Defendant's argument.  See Fed.R.Civ.P.11(b)(1) and (2).

Defendant misleadingly claims that Plaintiff has prevented it from using Plaintiff's medical records in discovery.

First, Plaintiff did not engage in a discovery violation. Plaintiff believed the records had been produced. When Plaintiff recognized that the records had been erroneously omitted from production, he promptly provided them to the Defendant. Plaintiff produced the records on November 19. 2021, nearly *three months* before the discovery deadline of January 1, 2022. Dkt. 39 (Amended Scheduling Order). Plaintiff offered to re-present Plaintiff for questioning at a deposition to address the medical records. Defendant never sought a second deposition. Further, Defendant failed to inform the Court that Plaintiff *agreed* to sign medical releases that were properly limited, and thought the parties had agreed to Plaintiff's proposed language, but Defendant *never returned the agreed-upon releases for Plaintiff to sign.* Ex 1 (Oct. 13 Ltr).

While exclusion of evidence is one sanction for a discovery violation, it does not apply in this case for several reasons. First, motions to exclude evidence based on a discovery violation fall under Fed.R.Civ.P.37, which, along with LCvR37.1, required the Defendant to confer before filing a motion to compel or to exclude. Fed.R.Civ.P.37(a); LCvR37.1. Defendant has never conferred or attempted to resolve the issue. Defendant did not seek to compel the medical records, and never accepted Plaintiff's offer to sit for a second deposition to answer questions about the medical records.

Second, because Defendant never conferred or filed a motion under Rule 37, there has never been a finding that Plaintiff violated a discovery obligation (he has not). Even if there were such a finding (there is not), the Plaintiff must be given the opportunity to show that any nondisclosure was substantially justified or harmless. Fed.R.Civ.P.37(c)(1). But as explained

above, Plaintiff produced the records months before the discovery deadline and allowed Defendant the opportunity to re-depose the Plaintiff over the records. Defendant chose not to take advantage of Plaintiff's offer and cannot now complain that it has been harmed (it has not). See *Hirpa v. IHC Hosps., Inc.*, 149 F. Supp. 2d 1289, 1294-1295 (D. Utah 2001)("Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure.")

<u>C – Plaintiff is Not Required to Show Sole Causation</u>

Defendant argues at p. 15 that Plaintiff is required to show "sole" causation. Defendant is incorrect. Unlike other claims brought under Sec. 504 of the Rehabilitation Act, claims alleging *employment* discrimination are governed by the standards set out in the Americans with Disabilities Act. 29 U.S.C.S. § 794(d)(underlining supplied):

> **(d) Standards used in determining violation of section.** The standards used to determine whether this section has been violated in a complaint <u>alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990</u> (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201–12204 and 12210), as such sections relate to employment.

Plaintiff is not an employee of the federal government and, thus, brings his claims under 29 U.S.C. § 791. Like its federal-employee counterpart, Sec. 791(f) incorporates the standards of the Americans with Disabilities Act:

> **(f) Standards used in determining violation of section.** The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section <u>shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201–12204 and 12210), as such sections relate to employment.</u>

29 USCS § 791(f), underlining supplied.[5]

 

In *Wilkerson v. Shinseki*, 606 F.3d 1256 (10th Cir. 2010) the Tenth Circuit relied on the language of Sec. 791(f) to find that the Court must "apply the same standards from the Americans with Disabilities act in analyzing a Rehabilitation Act claims". *Id*. at 1262.[6]

The ADA provides that "No covered entity shall discriminate against a qualified individual on the basis of disability <u>in regard to</u> . . . discharge of employees . . . and other terms, conditions, and privileges of employment". 42 U.S.C. § 12112(a). Thus, Defendant's instructions must replace "solely" with "in regard to". See also *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 544 (10th Cir. 2014); *Collardey v. Alliance for Sustainable Energy, LLC*, Case No. 18-cv-00486-PABSKC, 2019 WL 4450201, at *3 (D. Colo. Sept. 16, 2019) (relying upon Smothers for both ADA and Rehabilitation Act discrimination claims) and *Driskill v. State of Oklahoma, ex rel., Board of Regents of the University of Oklahoma*, CIV-21-240-F, United States District Court for the Western District of Oklahoma, Dkt. 14, p. 9. See, e.g., *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 965 (10th Cir. 2002)(affirming court's decision to give mixed-motive instruction on an ADA disability claim):

> Centrilift also argues there was insufficient evidence for the district court to submit a mixed-motive instruction to the jury. Once again, Centrilift relies on its contested assertion "[Mr.] Garrison never alleged any form of discrimination under the [American with Disabilities Act] to trigger a mixed-motive instruction." Because Centrilift's' argument concerns the district court's decision to give a particular instruction, we review for abuse of

---

[5] Sections 791(f) and 794(d) of Title 29 are identical except that Sec. 971(f) is limited to "complaints alleging nonaffirmative action employment discrimination", whereas Sec. 794(d) does not contain a similar limitation. 29 U.S.C. § 971(f).

[6] *Wilkerson*, decided in 2010, cited to 29 U.S.C. 791***(g)***, however in 2014 the language was moved to 29 USC. § 791***(f)***. See 2014 Amendment Notes to 29 U.S.C. § 791 (redisgnating "subsec. (g) as subsec. (f)")

discretion. *McClatchey*, 217 F.3d at 834. " A mixed motive instruction is … appropriate in any case where the evidence is sufficient to allow a trier to find both forbidden and permissible motives." *Medlock*, 164 F.3d at 553 (quotation marks and citations omitted). The same allegations and evidence which justify the jury verdict also justify the mixed motive instruction. *See supra* note 1 and accompanying text. Mr. Garrison has alleged Centrilift used entrance examination results to discriminate on the basis of disability. Mr. Brown's stated reasons for withdrawing Mr. Garrison's job offer, both at trial and in a recorded telephone conversation, give rise to a sufficient inference of a discriminatory motive. Therefore, the district court did not abuse its discretion in giving a mixed motive instruction.

Defendant argues at p. 15 (bottom) that some courts have viewed the Rehabilitation Act's language as requiring "but-for" causation.

### E – A Heightened Showing is NOT Required for Compensatory Damages

Defendant argues at Trial Brief, p. 16 that a heightened showing is required to entitle Plaintiff to compensatory damages.  Defendant is wrong.  Plaintiff need only show that the Defendant "intentionally discriminated" against him to be entitled to compensatory damages for the disparate treatment and retaliation claims. *Id.*; also *Griffin v. Steeltek, Inc.*, 261 F.3d 1026, 1028-29 (10th Cir. 2001):

> Nominal damages are  a  token award, compensatory in  nature. *Griffith  v. Colorado*, 17 F.3d 1323, 1327 (10th Cir. 1994). Compensatory damages are available under the ADA, however, only if the plaintiff establishes that the employer not only technically violated § 12112(d)(2)(A) by asking a prohibited question, but also that by doing so it actually "engaged in unlawful intentional discrimination." 42 U.S.C. § 1981a(a)(2); § 12117(a) (adopting the remedies available for violations of Title VII set out at 42 U.S.C. § 2000e-5); *see also Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 520 (3rd Cir. 2001) (holding that ADA claimant must present evidence of actual harm arising from technical violation of § 12112(d)); *Cossette v. Minn. Power & Light*, 188 F.3d 964, 971 (8th Cir. 1999) (holding that ADA claimant must establish a "tangible injury" caused by technical violation of § 12112(d) in order to recover compensatory damages);

As the U.S. Supreme Court explained in *Kolstad v. ADA*, 527 U.S. 526, 534, 119 S. Ct. 2118, 2124 (1999)(differentiating between the standards for compensatory and punitive damages):

> The very structure of § 1981a suggests a congressional intent to authorize punitive awards in only a subset of cases involving intentional discrimination. Section 1981a(a)(1) limits compensatory and punitive awards to instances of intentional discrimination, while § 1981a(b)(1) requires plaintiffs to make an additional "demonstration" of their eligibility for punitive damages. Congress plainly sought to impose two standards of liability -- one for establishing a right to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award.

Accord *Juarez v. ACS Gov't Sols. Grp.*, 314 F.3d 1243, 1246-47 (10th Cir. 2003).

Nor is Plaintiff required to prove deliberate indifference in addition to intentional discrimination.  The Tenth Circuit has clarified that the term "intentional discrimination" is often, and confusingly, used interchangeably with "deliberate indifference". See, e.g., *Hans v. Bd. of Shawnee Cty. Comm'rs*, 775 F. App'x 953, 961 n.7 (10th Cir. 2019):

> Much confusion stems from the circuit courts indiscriminately using the term "intentional-discrimination." When used to describe the nature of a claim, courts often use the term interchangeably with "disparate treatment." *See, e.g., Albuquerque Pub. Sch.*, 813 F.3d at 1295. But many courts also use the term to describe the level of culpability necessary to obtain compensatory damages, using "intentional discrimination" interchangeably with "deliberate indifference." *See* Part II.C *infra*.

In this regard, "deliberate indifference" is merely one of the many ways a plaintiff can show intentional discrimination.  See, e.g., *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1264 (10th Cir. 2018):

> Deliberate indifference is sufficient to satisfy the intentional-discrimination requirement   for compensatory damages under    §   504: "[I]ntentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Powers*, 184 F.3d at 1153;
>
> * * *
>
> This deliberate-indifference standard is consistent with the purposes animating the Rehabilitation Act. In this regard, "the Supreme Court has instructed the Rehabilitation Act was adopted not only to curb 'conduct fueled by discriminatory animus,' but also to right 'the result of apathetic attitudes rather than affirmative animus.'" *Powers*, 184 F.3d at 1152 (quoting *Alexander*, 469 U.S. at 295 ("Discrimination against the handicapped was perceived by Congress to

be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect."))

### F – Plaintiff's Damages Are Not Limited to $33,552

Defendant argues that Plaintiff's "total damages are limited to $33,552". Trial Brief, p. 17. Defendant is wrong. Plaintiff's <u>wage loss</u> is limited to $33,552. Ex 2 Plf's Resp Int. No. 13, p 11-12. However, Plaintiff also incurred $4,239.75 in out-of-pocket medical expenses he would not have incurred had he not been terminated (and still under Defendant's healthcare plan). *Id.* In addition, Plaintiff will present evidence of his dignitary harm/emotional distress damages. Plaintiff discussed such damages in his interrogatory response. *Id.*[7] Defendant is subject to a $300,000 damage cap for compensatory damages. 42 U.S.C. § 1981a(b)(3).[8]

In addition, Plaintiff will be entitled to liquidated damages under the OADA claims, equal to his wage loss. 25 Okla. St. § 1350(G).

**RESPECTFULLY SUBMITTED THIS 25th DAY OF APRIL 2022**.

HAMMONS, HURST & ASSOCIATES

s/ Amber L. Hurst
Mark E. Hammons, OBA No. 3784
Amber L. Hurst OBA No. 21231
Brandon D. Roberts, OBA No. 34012
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
amber@hammonslaw.com
*Attorneys for Plaintiff*

---

[7] Defendant never claimed the response was deficient.

[8] Defendant does not dispute that the Defendant State of Oklahoma employed more than 500 people during the relevant time period.

## CERTIFICATE OF SERVICE

A true copy of the foregoing was filed and served by use of this Court's ECF system of filing and service to the opposing counsel below listed on this 25th day of APRIL 2022.

Victor F. Albert, OBA # 12069
Justin P. Grose, OBA # 31073
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
The Heritage Building
621 N Robinson Ave., Suite 40
Oklahoma City, Oklahoma 74102
Telephone: (405) 546-3755 (Vic Albert direct line)
Telephone: (405) 546-3758 (Justin Grose direct line)
Facsimile: (405) 546-3775
Victor.Albert@oletree.com
Justin.Grose@oletree.com
*Attorneys for Defendant*

s/ Amber L. Hurst