## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

TERRY CRONKITE,                          )
                                         )
     **Plaintiff,**                       )
                                         )
v.                                       )   **Case No. CIV-20-250-G**
                                         )
STATE OF OKLAHOMA *ex rel.*              )
OKLAHOMA ATTORNEY GENERAL,               )
                                         )
     **Defendant.**                       )

## ORDER

Plaintiff Terry Cronkite initiated this action in March 2020, alleging that he was subjected to unlawful discrimination on the basis of his disability and age in connection with his employment by Defendant State of Oklahoma *ex rel.* Oklahoma Attorney General ("OAG"). Plaintiff's pending claims arise under the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 791, and the Oklahoma Anti-Discrimination Act ("OADA"), Okla. Stat. tit. 25, §§ 1101 et seq. *See* Compl. (Doc. No. 1-1); Order of Mar. 17, 2021 (Doc. No. 27).

Now before the Court are motions for summary judgment filed by each party. The motions are fully briefed and at issue.

I.    *Summary Judgment*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).  To defeat summary judgment, the nonmovant need

not convince the Court that it will prevail at trial, but it must cite sufficient evidence

admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show

that there is a question of material fact that must be resolved by the jury.  *See Garrison v.*

*Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  The Court must then determine

"whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B).  While the Court views the evidence and the inferences

drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola*

*Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he

mere existence of a scintilla of evidence in support of the [nonmovant's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the

[nonmovant]."  *Liberty Lobby*, 477 U.S. at 252.

When, however, the moving party has the burden of proof at trial, "a more stringent

summary judgment standard applies."  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).

The moving party cannot carry its burden by "pointing to parts of the record that [the

movant] believes illustrate the absence of a genuine issue of material fact."  *Id.*  Rather, to

obtain summary judgment on its own claim or defense, a movant "must establish, as a matter of law, all essential elements of the issue before the nonmovant can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

Regarding cross-motions for summary judgment, the Tenth Circuit has explained:

"The filing of cross-motions for summary judgment does not necessarily concede the absence of a material issue of fact. This must be so because by the filing of a motion a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 324-25 (10th Cir. 1967). Accordingly, "cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts.'" *Id.*

*Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (alteration and citations omitted).

## II.    Relevant Background[1]

Plaintiff, who was born in 1948, began working for OAG in 2014 as a Law Enforcement Agent/Investigator. Compl. ¶¶ 1, 6. He later was promoted to the position of Chief Investigator. Pl. Dep. (Doc. Nos. 65-2, 66-2, 66-12, 85-3, 86-1, 132-1) at 39:10-22. By January 2019, Plaintiff was working as the agent in charge of the OAG's investigations unit, supervising 35 to 40 investigators. *Id.* at 40:13-22.

Dawn Cash was the First Assistant Attorney General and exercised authority over Plaintiff at OAG as his second-in-line supervisor. Compl. ¶ 10; Cash Dep. (Doc. Nos. 65-3, 66-8, 85-4, 86-2) at 18:14-19. Mary Ann Roberts was the Chief Deputy Assistant

---

[1] Facts relied upon in this Order are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to the applicable nonmoving party.

General and was Plaintiff's first-in-line supervisor.  Compl. ¶ 12; Cash Dep. 18:22-24.

On January 8, 2019, an official at the Oklahoma Bureau of Narcotics and Dangerous Drugs ("OBN") e-mailed Ms. Cash regarding a Task Force that was being initiated at OBN. Def.'s Mot. Ex. 6 (Doc. No. 66-6).  The email indicated that the official had spoken to Plaintiff prior to January 4, 2019, and that Plaintiff was "working on his end to identify a fitting investigator" for the Task Force.  *Id.*  At some point in January 2019, Plaintiff identified an agent named Brent Locke to potentially fill the OBN position.  Cash Dep. 66:10-67:4.

Ms. Cash believed that Mr. Locke could not be easily transferred to the OBN position due to funding issues with Mr. Locke's current salary.  *Id.* at 69:11-15, 168:15-22. Ms. Cash believed there was an "immediate need" to fill the OBN position and decided that Plaintiff should be assigned to the job.  Cash Dep. 65:25-66:9, 89:21-91:3; *see also* Roberts Dep. (Doc. Nos. 65-8, 66-9, 85-2, 86-5) at 45:22-24.

Plaintiff understood the OBN position to require stressful activities and physical duties beyond those of the Chief Investigator job at which he was then employed.  Pl. Dep. 147:12-25.  According to Plaintiff, no one ever contradicted or corrected this understanding or told him that the OBN position would be "anything other than . . . a running and gunning, undercover drug agent deal."  Pl. Aff. ¶ 6 (Doc. No. 86-7).

On January 29, 2019, Ms. Cash and Ms. Roberts met with Plaintiff and told Plaintiff that he was being transferred to the OBN Task Force position.  Cash Dep. 59:7-13, 60:2-6. Ms. Cash recalled that Plaintiff "agreed," "said okay," "nodd[ed] affirmatively," and "seemed pleased."  *Id.* 60:11-21, 62:16-24.  Plaintiff contends that, to the contrary, he did

4

not accept the position or nod his head.  Pl. Dep. 216:22-217:9.  Plaintiff alleges that he told Ms. Cash at this meeting he would need to check with his cardiologist before committing to the new job.  Pl. Dep. 132:10-133:13, 178:2-8.

On January 31, 2019, Plaintiff met with Ms. Roberts.  Plaintiff expressed concerns about the transfer and told Ms. Roberts that he "didn't want to do this assignment," informing Ms. Roberts that he had undergone heart surgery nine years ago.  Roberts Dep. 49:22-50:6.  Plaintiff told Ms. Roberts that he would need clearance from his doctor to take the OBN position.  *Id.* at 42:6-25, 77:6-25, 99:21-23; Def.'s Mot. Ex. 11 (Doc. No. 66-11).

Plaintiff met with Ms. Roberts again on February 4, 2019.  At this meeting, Plaintiff expressed to Ms. Roberts that he "can't do" the OBN Task Force due to his health conditions.  Roberts Dep. 82:4-6.  Plaintiff cited heart, hearing, thyroid, and kidney stone conditions as "the reason he did not want to go" to the new position and asked "to be able to remain in the Chief Investigator position" because of his medical issues.  *Id.* at 99:8-24; Pl. Aff. ¶ 5; Pl.'s Interr. Resp. No. 1 (Doc. No. 65-1).  Ms. Roberts conveyed the information discussed in the January 31 and February 4 meetings to Ms. Cash.  Roberts Dep. 107:23-108:2.

Plaintiff provided OAG with a letter from his treating cardiologist, Michael A. Scherlag, MD, dated February 5, 2019.  Def.'s Mot. Ex. 1 (Doc. No. 66-1).  The letter noted Plaintiff's 2009 coronary artery bypass graft surgery and his "medically managed" essential hypertension and hyperlipidemia.  *Id.*  Dr. Scherlag stated in the letter: "I have concerns that his recent job assignment may require more physically demanding challenges, which may stress and aggravate his Coronary Artery Disease and

hypertension." *Id.* The letter was provided to Ms. Cash on or before February 13, 2019. Cash Dep. 97:1-19.

On February 13, 2019, Plaintiff met with Ms. Cash and Ms. Roberts. Without notifying them, Plaintiff recorded the audio of their meeting. Pl. Dep. 158:21-163:16. At this meeting, Plaintiff referred to Dr. Scherlag's letter and to his health concerns; Ms. Cash responded, "Okay. So that's the first I'm really hearing that from you." *Id.* at 259:19-160:22. Plaintiff further stated: "I pretty much know what I can do and what I can't and what—you know, you guys are in charge here, . . . I don't want to be a drug agent. . . . . I figure when I turn this down, I'm out of here, but . . . I don't want to resign, you know. If you want me out of here, fire me, but that's—I'm not going to resign." *Id.* at 161:22-162:10. Ms. Roberts and Ms. Cash testified that they found Plaintiff's demeanor during this meeting to be defiant and aggressive. *See* Roberts Dep. 194:20-196:19; Cash Dep. 122:4-20, 124:18-125:1. Plaintiff concedes he was "frustrated" but denies acting aggressively or belligerently. Pl. Aff. ¶ 5.

Around this time, Ms. Cash learned that Plaintiff had packed up boxes in his office, which she initially interpreted as Plaintiff preparing to "head[] over to OBN to fulfill the commitment he made to accept that position." Cash Dep. 105:20-24, 121:22-25, 122:24-123:7. She later "learned that he was meaning, no, I'm out." *Id.* at 105:24-25. Plaintiff agrees that he was sorting items in boxes in his office but denies that he was packing up boxes in order "to leave" the Chief Investigator position. Pl. Aff. ¶ 12.

Ms. Cash decided to terminate Plaintiff's employment. Cash Dep. 94:3-21; *see also* Roberts Dep. 47:15-48:2. She stated that she did so because Plaintiff had led her to believe

he was accepting the OBN transfer "and then boxed his things up as if to leave, was telling people that he was leaving the agency, and then abruptly told [Ms. Cash] he wasn't going to accept the assignment and [Ms. Cash] would have to fire him."  Cash Dep. 126:7-15; *accord* Def.'s Interr. Resp. No. 1 (Doc. No. 66-10) ("[Plaintiff's] refusal, and his attitude and communications with his supervisors and others at OAG, le[d] to a decision to terminate his employment.").    On February 15, 2019, an OAG human resources representative informed Plaintiff that he could either resign or be terminated from his position.  Pl. Dep. 123:2-19.  Plaintiff answered that he would not resign, and he was terminated that day.  *Id.*  The OAG Chief Investigator position was not eliminated and was ultimately filled by an individual who was born in 1963.  Pl.'s Resp. Ex. 6 (Doc. No. 86-6); Am. Answer (Doc. No. 36) ¶¶ 22-23.

Plaintiff's Rehab Act disability claims take three forms: (1) failure to accommodate his disability; (2) intentional discrimination based upon his termination from employment; and (3) retaliatory termination based upon OAG's opposition to his request to an accommodation of his disability.  *See* Compl. ¶¶ 27-30.  Plaintiff also raises claims under the OADA for disability and age discrimination.  *See id.* ¶¶ 27-31, 33-34.

OAG seeks summary judgment on all of Plaintiff's claims.  *See* Def.'s Mot. Summ. J. (Doc. No. 66); Pl.'s Resp. (Doc. No. 86); Def.'s Reply (Doc. No. 98); Pl.'s Surreply (Doc. No. 132).  Plaintiff has moved for summary judgment on his Rehab Act failure-to-

accommodate claim.[2]  *See* Pl.'s Mot. Summ. J. (Doc. No. 65); Def.'s Resp. (Doc. No. 85); Pl.'s Reply (Doc. No. 97).[3]

    III.   *Disability Discrimination Under the Rehabilitation Act*

        A.  *Failure to Accommodate*

Section 504 of the Rehab Act, 29 U.S.C. § 794, prescribes that "[n]o otherwise qualified individual with a disability" "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a); *see also id.* § 794(b)(1).  In analyzing a claim brought under § 504, the Court applies the standards from the Americans with Disabilities Act ("ADA"), which prohibits discrimination "against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a); *see Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010); 29 U.S.C. § 791(f).

Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," "unless [the] covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the] covered entity."  42 U.S.C. §

---

[2] Plaintiff also sought summary judgment upon two affirmative defenses pleaded by Defendant.  *See* Pl.'s Mot. at 19-24.  Defendant has responded by withdrawing those affirmative defenses, and so the Court need not reach this aspect of Plaintiff's Motion.  *See* Def.'s Resp. at 30.

[3] Although the parties' briefing seeks the Court's disposition of an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., Plaintiff's ADEA claim was previously dismissed by the Court.  *See* Order of Mar. 17, 2021, at 2-3, 4.

12112(b)(5)(A); *see also Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 794 (10th Cir. 2020) ("The ADA establishes a cause for action for disabled employees whose employers fail to reasonably accommodate them." (emphasis and internal quotation marks omitted)).   A reasonable accommodation may include "job restructuring, part-time or modified work schedules," and "things like adding ramps . . . or reassigning a disabled employee to a vacant position." 42 U.S.C. § 12111(9)(B); *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1195 (10th Cir. 2017) (internal quotation marks omitted).

### 1.  Plaintiff's Prima Facie Case

In his first claim, Plaintiff alleges that OAG failed to accommodate his disability by refusing to allow Plaintiff to remain in his position as Chief Investigator, or offering an alternative position, after Plaintiff refused the transfer to the OBN Task Force position.

The Court applies a "modified *McDonnell Douglas* burden-shifting framework" in considering a failure-to-accommodate claim.  *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018).  Under the first step of that framework, a plaintiff must establish a prima facie case by showing: "1) []he was disabled, 2) []he was otherwise qualified, 3) []he requested a plausibly reasonable accommodation, and 4) the [employer] refused to accommodate [his] disability."  *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020).  While establishing this prima facie case "is not onerous," a plaintiff must bear the burden of production on each element to survive summary judgment.  *Id.*; *Smith v. Midland Brake, Inc.* 180 F.3d 1154, 1179 (10th Cir. 1999).

*a. Actual Impairment Under 42 U.S.C. § 12102(1)(A)*

OAG argues that Plaintiff cannot establish a prima facie case because he cannot show that he was disabled within the meaning of the Rehab Act at the relevant time. Disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000); *see* 42 U.S.C. § 12102(1)(A)-(C). Plaintiff counters that for purposes of his failure-to-accommodate claim he qualifies as disabled under subsection (A). *See* Pl.'s Mot. at 14-16.

"[C]onsideration of subsection (A) of the definition proceeds in three steps." *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). First, courts consider whether the plaintiff has a physical or mental impairment. *See id.* Second, they "identify the life activity" upon which the plaintiff relies and "determine whether it constitutes a major life activity under the [Act]." *Id.* Third, they ask "whether the impairment substantially limited the major life activity." *Id.* "Whether a plaintiff has met the first two requirements [is a] question[] of law for the court. But whether the impairment substantially limits a major life activity is ordinarily a question of fact for the jury." *Sanchez v. Vilsack*, 695 F.3d 1174, 1178 (10th Cir. 2012) (internal quotation marks omitted).

Plaintiff has submitted medical records reflecting that during the relevant time period he suffered from multiple cardiac conditions, including hypertension, hyperlipidemia, and coronary artery disease, and underwent a triple coronary artery bypass in 2009. *See* Pl.'s Mots. Exs. 6, 7 (Doc. Nos. 65-6, 65-7); Pl.'s Resp. Ex. 13 (Doc. No.

87).  These conditions plainly qualify as a physical impairment under the Rehab Act.  *See* 29 C.F.R. § 1630.2(h)(1) (defining "physical impairment" to include "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as . . . cardiovascular" and "circulatory").[4]

Plaintiff cites as his affected "major life activity" "[t]he operation of" his "circulatory" and "cardiovascular . . . functions."  Pl.'s Mot. at 14; 29 C.F.R. § 1630.2(i)(1)(ii).  OAG does not dispute that this qualifies as a major life activity but argues that Plaintiff has not provided sufficient support, such as expert testimony, to establish that such a major life activity is "substantially limited" by his cardiac conditions.  *See* Def.'s Resp. at 16-23.

To qualify as "substantially limiting" under step three, the impairment must "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii).  Pursuant to the governing regulation, the term "substantially limits" must be "construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard."  *Id.* § 1630.2(j)(1)(i).  The Court may consider factors, "as compared to most people in the general population," such as: "the condition under which the individual performs the major

---

[4] OAG refers to the medical records as "inadmissible hearsay," Def.'s Resp. at 5, 6, 21, but fails to offer any reasoned basis for this objection beyond citation to Rules 801 and 802 of the Federal Rules of Evidence.  Further, Plaintiff responds that he has identified the treating physicians as trial witnesses to allow them to testify and authenticate the records.  *See* Pl.'s Reply at 5; *see also Graham v. Sheriff of Logan Cnty.*, No. CIV-10-1048-F, 2012 WL 9509373, at *6 n.3 (W.D. Okla. Nov. 1, 2012) (overruling objection to medical records at summary judgment "as the content would be admissible").  Defendant has not shown that the information in these records "cannot be presented in a form that would be admissible in evidence," and so the Court overrules this objection.  Fed. R. Civ. P. 56(c)(2).

life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity." *Id.* § 1630.2(j)(4)(i). Although "not every impairment will constitute a disability," "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* § 1630.2(j)(1)(ii).

At the summary-judgment stage, a plaintiff "must point to some evidence showing that her impairment limits h[im]" in this manner. *Sanchez*, 695 F.3d at 1178. "[I]t is not sufficient for a plaintiff to identify an impairment and leave the court to infer that it results in substantial limitations to a major life activity." *Id.* The court's "primary object," however, is to determine "whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(1)(iii). Accordingly, assessment of this threshold issue "should not demand extensive analysis." *Id.*

The medical records reflect that Plaintiff took daily prescription medication on account of his cardiovascular issues. *See* Pl.'s Resp. Ex. 13, at 1. The letter from Plaintiff's treating physician is consistent with this proposition. *See* Def.'s Mot. Ex. 1 (Dr. Scherlag stating that Plaintiff's conditions are "medically managed").[5]   Performing an

---

[5] Though not clear, OAG appears to include Dr. Scherlag's letter within the evidence that the Court should disregard as hearsay. The Court rejects this contention, noting that Plaintiff has identified Dr. Scherlag as a testifying trial witness and that OAG has itself presented and relied upon the contents of the letter in seeking summary judgment. *See generally* Fed. R. Civ. P. 56(c)(2); *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 1000 (10th Cir. 2019).

"individualized assessment" as required, the Court concludes that this evidence—while not overwhelming—is sufficient that a reasonable jury could conclude that Plaintiff's impairments "substantially limit[ed]" one or more of his major life activities. 29 C.F.R. § 1630.2(j)(1)(iv); *see also id.* § 1630.2(j)(1)(v) (prescribing that the comparison of the plaintiff's performance of a major life activity to the performance by most people in the general population "usually will not require scientific, medical, or statistical analysis"); *id.* § 1630.2(j)(1)(vi) ("The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures."); *cf. Yinger v. Postal Presort, Inc.*, 693 F. App'x 768, 773 (10th Cir. 2017) (indicating that the district erred in failing to consider the effect of the plaintiff's heart condition without a pacemaker).

Upon considering the evidence in the record in the light most favorable to Plaintiff, the Court finds that there is a genuine factual dispute as to whether Plaintiff was "actually disabled" under 42 U.S.C. § 12102(1)(A).

### b. Other Elements of the Prima Facie Case

With respect to the remainder of Plaintiff's prima facie case, OAG does not dispute that Plaintiff "was otherwise qualified" to perform his requested accommodation—i.e., declining the OBN transfer and remaining in the Chief Investigator position. *Aubrey*, 975 F.3d at 1005; *see* Cash Dep. 116:15-18. In addition, the Court finds that Plaintiff's alleged request to remain in a position in which he already was satisfactorily performing—and which remained open after that employee's departure—is "a plausibly reasonable accommodation." *Aubrey*, 975 F.3d at 1005 ("The term 'reasonable accommodation'

refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." (alteration and internal quotation marks omitted)); *see also* 42 U.S.C. § 12111(9)(B) (citing "job restructuring" and "reassignment to a vacant position" as possible reasonable accommodations); *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002) (noting that at summary judgment the plaintiff "need only show that an 'accommodation' seems reasonable on its face").

OAG disputes, however, that Plaintiff made an adequate request for an accommodation for his disability.  *See* Def.'s Resp. at 27 ("Plaintiff never made an accommodation request, much less an adequate one.").

> Before an employer's duty to provide reasonable accommodations or to participate in the interactive process is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice.  *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011). Furthermore, awareness of a disability is not sufficient to place the employer on notice that an employee needs an accommodation.  The employee must make an adequate request for an accommodation for the disability.  The request for accommodation must be sufficiently direct and specific, giving notice that the employee needs a special accommodation.

*Dees v. Dobson Techs.*, No. CIV-19-915-F, 2021 WL 27476 (W.D. Okla. Jan. 4, 2021) (citations omitted); *see also Lincoln*, 900 F.3d at 1206 ("[A] failure-to-accommodate claim does not arise until after the employee requests a plausible reasonable accommodation." (alteration and internal quotation marks omitted)).

OAG asserts that Plaintiff never requested an accommodation, and so no accommodation was discussed.  *See* Cash Dep. 148:7-16, 152:8-10.  Plaintiff points to (1) the January 29, 2019 meeting, averring that he stated at that meeting that he would need to check with his cardiologist regarding the transfer; (2) the January 31, 2019 meeting,

averring that he stated at that meeting that he did not want to do the assignment and would need medical clearance; and (3) the February 4, 2019 meeting, averring that he stated at that meeting that he "can't do" the OBN job and asked "to be able to remain in the Chief Investigator position" because of his medical issues, as well as his uncontroverted belief that the OBN job carried more strenuous physical requirements.  Roberts Dep. 82:4-6; Pl. Aff. ¶¶ 5, 6; Pl.'s Interr. Resp. No. 1.

A request for accommodation may be substantively adequate even if not formally made:

> Although the notice or request does not have to be in writing, be made by the employee, or formally invoke the magic words "reasonable accommodation," it nonetheless must make clear that the employee wants assistance for his or her disability.  That is, the employer must know of both the disability and the employee's desire for accommodations for that disability.

*C.R. England*, 644 F.3d at 1049 (emphasis, citation, and internal quotation marks omitted). Viewed in Plaintiff's favor, the evidence set forth above would allow a reasonable jury to find that Plaintiff adequately requested a plausible reasonable accommodation for his disability and that OAG refused to provide that accommodation or engage with Plaintiff to facilitate any other accommodation.  Upon considering the evidence in the record in the light most favorable to Plaintiff, the Court finds that there is a genuine factual dispute as to whether Plaintiff properly requested an accommodation for his alleged disability.

### 2.  OAG's Burden

Because Plaintiff has made the requisite showing of a prima facie case, the burden of production "shifts to [OAG] to present evidence" that either "establish[es] an affirmative

defense" or "conclusively rebut[s] one or more elements of [Plaintiff's] prima facie case." *Lincoln*, 900 F.3d at 1204 (internal quotation marks omitted).

OAG cites no affirmative defense, such as undue hardship. *See generally Exby-Stolley*, 979 F.3d at 821-22. OAG instead attacks Plaintiff's prima facie case by pointing again to Ms. Cash's belief that, rather than OAG denying a request by Plaintiff, Plaintiff was reneging on his earlier agreement and forcing OAG to fire him. *See* Cash Dep. 126:7-15, 145:1-8, 148:7-16, 194:1-195:3. Further, OAG asserts that Ms. Cash did not understand the OBN job to be any more physically demanding than the Chief Investigator job. *See id.* at 145:1-8, 188:18-189:2, 191:8-14.

The Court finds that OAG therefore has produced evidence that would, if believed, rebut Plaintiff's assertion that OAG refused his requested accommodation.

### 3. *Plaintiff's Reply to OAG's Challenge*

The burden then reverts to Plaintiff to "present evidence . . . rehabilitat[ing] any challenged elements of . . . [his] prima face case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (second omission in original) (internal quotation marks omitted).

The record reflects that the issue of whether Plaintiff sufficiently presented an accommodation request to OAG is genuinely disputed, with Plaintiff stating that he directly requested to decline the transfer and retain his Chief Investigator position based upon his health issues, and Cash stating that Plaintiff refused the transfer without any accompanying accommodation request and was then terminated for other reasons. "On summary

judgment, a district court may not weigh the credibility of the witnesses." *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, Plaintiff need not prove that OAG harbored "any particular intent" when breaching its obligation to make a reasonable accommodation.  *Exby-Stolley*, 979 F.3d at 797.

In view of the contradictory testimony on this point, and there being no conclusive evidence as to what was requested by Plaintiff, the Court determines that Plaintiff has sufficiently "rehabilitate[d]" his prima facie case and has shown a genuine dispute as to whether OAG refused to accommodate his disability after receiving an adequate request to do so.

### 4.  Conclusion

Having considered the parties' argument and the relevant record, the Court finds that "there remains genuine evidence supporting each element of [Plaintiff's] prima facie case," and, therefore, "summary judgment for [OAG] should be denied" as to Plaintiff's failure-to-accommodate claim.  *Smith*, 180 F.3d at 1179.[6]

### B.  Discriminatory Termination

OAG next moves for summary judgment on Plaintiff's claim that his February 15, 2019 termination from the Chief Investigator position was an instance of intentional discrimination based upon Plaintiff's disability.

---

[6] Plaintiff's request for summary judgment on this claim also is denied.  When considering the evidence in the record in the light most favorable to OAG, genuine factual disputes exist as to whether Plaintiff was "actually disabled" under 42 U.S.C. § 12102(1)(A), whether Plaintiff adequately requested a plausible reasonable accommodation for his disability, and whether OAG refused to provide that accommodation or engage with Plaintiff to facilitate any other accommodation.

To prove such a disparate-treatment claim, Plaintiff must first establish his prima facie case by showing: "(1) that he is disabled within the meaning of the [Rehab Act]"; (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) that he was discriminated against because of his disability." *Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1218-19 (10th Cir. 2016).

As outlined above, Plaintiff has adequately established that he is disabled for purposes of the Rehab Act.  Further, the parties do not dispute that he was qualified to perform the essential functions of the Chief Investigator position.  *See* Cash Dep. 116:15-18.

> As to the third element, the Court's inquiry
>
> focuses on whether the circumstances surrounding the adverse employment action give rise to an inference that the action was based on the plaintiff's disability.  A plaintiff may establish an inference of discrimination through (1) actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, (2) preferential treatment given to employees outside the protected class, (3) a pattern of recommending the plaintiff for positions for which she is not qualified or over-qualified, and (4) a failure to surface plaintiff's name for positions for which she is well-qualified.  The mere fact that the plaintiff was qualified for a position but the employer selected another qualified individual who was not a member of plaintiff's protected class is insufficient to establish an inference of discrimination.  Instead, the inference of discrimination element of the prima facie case "requires the plaintiff to present some affirmative evidence that disability *was a determining factor* in the employer's decision." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (emphasis added). The burden of production placed on the plaintiff relative to the inference of discrimination element, however, "is not onerous." *Id.* (internal quotation marks omitted).

*Lincoln*, 900 F.3d at 1192-93 (alterations, citations, and internal quotation marks omitted).

To establish this element, Plaintiff points to the short time that elapsed between when he first advised OAG of his cardiac condition (late January-early February 2019) and his firing date (February 15, 2019).  This close temporal proximity "contributes to an inference that [Plaintiff was terminated] because of his disability." *Butler v. City of Prairie Vill.*, 172 F.3d 736, 749 (10th Cir. 1999).  Stated differently, the passing of only a few weeks between Plaintiff informing OAG about his medical issues and Ms. Cash firing Plaintiff constitutes "evidence that, if the trier of fact finds . . . credible, and the employer remains silent," would entitle Plaintiff to judgment in his favor.  *Id.*; *see also Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1260 (10th Cir. 2001).

Plaintiff having established his prima facie case, the burden shifts to OAG "to articulate 'a legitimate, nondiscriminatory reason'" for the termination.  *Lincoln*, 900 F.3d at 1193 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  OAG argues that Plaintiff was fired based upon his ultimate refusal to transfer to the OBN Task Force position, when Ms. Cash believed Plaintiff already had assented to the transfer and after OAG had promised to send someone to fill the position, and based upon Plaintiff's "attitude and communications with his supervisors and others at OAG" following that refusal.  Def.'s Mot. at 15; *see* Cash Dep. 94:3-21, 126:7-15; Def.'s Interr. Resp. No. 1.  Thus, OAG has presented evidence of a facially nondiscriminatory reason for the termination.  *See, e.g.*, *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (finding that the employer met its burden by citing "gross insubordination" as the reason for discharge); *Alvarado v. Donley*, 490 F. App'x 932, 935-36 (10th Cir. 2012)

(finding that firing based upon the employee's "defiant or insolent" refusal to obey employer's order constituted a legitimate nondiscriminatory reason for termination).

Because OAG has met its burden, to survive summary judgment Plaintiff "must present circumstantial evidence sufficient to create a genuine issue of material fact on the question whether [OAG]'s stated justification is really just pretext for discrimination"— i.e., that the proffered reason is "unworthy of belief." *Alvarado*, 490 F. App'x at 936; *Kendrick*, 220 F.3d at 1231. This Plaintiff cannot do.

One way a plaintiff may make a showing of pretext is "with evidence that the defendant's stated reason for the adverse employment action was false." *Kendrick*, 220 F.3d at 1230. Plaintiff points to various factual disputes as evidence of OAG's "[d]ishonesty," but these disputes are largely unrelated to OAG's stated justification for the hiring decision; they therefore do not show that OAG's justification was "factually false." Pl.'s Resp. at 40-42; *Lincoln*, 900 F.3d at 1193. Plaintiff argues that Ms. Cash was incorrect in her understanding of Plaintiff's mindset and demeanor and asserts that he did not unconditionally agree to the transfer—but Plaintiff had boxes in his office, said he did not want to go to the OBN position, and told Ms. Cash, "If you want me out of here, fire me, but . . . I'm not going to resign." Pl. Aff. ¶¶ 5, 12; Pl. Dep. 162:9-20; *see* Pl.'s Resp. at 41. "[A] challenge of pretext requires [the court] to look at the facts as they appear to the person making the decision to terminate plaintiff." *Kendrick*, 220 F.3d at 1231. Even if incorrect, "[a] mistaken belief can be a legitimate decision for an employment decision and is not necessarily pretextual." *Id.* (internal quotation marks omitted).

Plaintiff also argues: "In discovery responses [OAG] denied Plaintiff disclosed his heart condition . . . , but Roberts testified Plaintiff disclosed his condition . . . ." Pl.'s Resp. at 40 (citing Def.'s Req. Admis. Answer No. 4 (Doc. No. 86-8)).  Plaintiff suggests that that Ms. Roberts' "false denial" of Plaintiff's communication "suggested [her] consciousness of guilt." *Id.* at 40-41.  While OAG properly should have sought to amend its discovery answer, this discrepancy does not evince "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in OAG's proffered reasons "that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan*, 108 F.3d at 1323 (internal quotation marks omitted).   "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for the denial of summary judgment." *Id.* (alteration and internal quotation marks omitted).

Finally, Plaintiff points again to the short interval between his disclosure of his disability and his firing as evidence of pretext. *See* Pl.'s Resp. at 40.  But while "temporal proximity is sufficient to establish a prima facie case," "temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext." *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1213 & n.6 (10th Cir. 2007); *accord Selenke*, 248 F.3d at 1260 (explaining that such evidence "provides some support" for a discrimination claim but "is not sufficient to avoid summary judgment").  This evidence, even when viewed in Plaintiff's favor, does not establish that "discrimination was a primary factor in the employer's decision." *Lincoln*, 900 F.3d at 1193 (internal quotation marks omitted).

Accordingly, the facts in evidence fail to give rise to a credible inference that the OAG's stated justification is actually a pretext for disability discrimination.   OAG is entitled to summary judgment on this claim.

### C. Retaliatory Termination

Plaintiff claims that after he asked to remain in the Chief Investigator position, OAG retaliated against him for seeking this accommodation by terminating his employment.   To establish this claim, Plaintiff must first prove his prima facie case: "that (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action."   *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1187 (10th Cir. 2016) (alteration and internal quotation marks omitted).[7]

OAG argues that Plaintiff did not engage in the requisite protected activity.   *See* Def.'s Mot. at 32.   "[A] request for accommodation can constitute protected activity supporting a retaliation claim," however.   *Foster*, 830 F.3d at 1188 (citing cases).   Such a request "is adequate" to constitute protected activity "if it is sufficiently direct and specific," "mak[ing] clear that the employee wants assistance for his . . . disability."   *Id.* (internal quotation marks omitted).   As outlined above, a reasonable jury could find that Plaintiff "g[ave] notice that [he] need[ed] a special accommodation."   *Id.* (internal

---

[7] "To prosecute a [Rehab Act] retaliation claim, a plaintiff need not show that he suffers from an actual disability.   Rather, . . . the plaintiff need only show that he had a reasonable, good-faith belief that he was disabled."   *Foster*, 830 F.3d at 1186 (alteration and internal quotation marks omitted).

quotation marks omitted); *see supra* Part III(A)(1)(b).  Accordingly, summary judgment is not warranted for OAG on this point.

Regarding the causal-connection element, OAG also argues that Plaintiff has not shown that his requesting accommodation was causally related to his termination.  *See* Def.'s Mot. at 32.  As with Plaintiff's discriminatory termination claim, however, the temporal proximity of only a few weeks "between [his] protected activity (requests for accommodation) and his termination from employment suffice to establish this causal connection" for purposes of Plaintiff's prima facie burden.  *Foster*, 830 F.3d at 1190; *see supra* Part III(B).

Because Plaintiff has established a prima facie case of retaliation, OAG "has the burden of showing it had a legitimate, nondiscriminatory reason for the adverse action.  If [OAG] can do so, the burden of production shifts back to [Plaintiff] to prove pretext, which requires a showing that the proffered nondiscriminatory reason is unworthy of belief." *Foster*, 830 F.3d at 1186 (alteration and internal quotation marks omitted).

As outlined above, OAG has made a sufficient showing of a legitimate nondiscriminatory reason for its firing of Plaintiff.  *See supra* Part III(B).  Plaintiff offers the same pretext arguments as with the previous claim; for the same reasons as outlined with respect to the discriminatory termination claim, however, Plaintiff cannot demonstrate either that Plaintiff's request for disability accommodation "more likely motivated" OAG or that OAG's "proffered explanation is unworthy of credence."  *Foster*, 830 F.3d at 1194 (internal quotation marks omitted); *see supra* Part III(B); Pl.'s Resp. at 39-42.

Accordingly, OAG is entitled to summary judgment on Plaintiff's Rehab Act retaliatory-termination claim.

IV.    *Disability Discrimination Under the OADA*

The OADA makes it a discriminatory practice for an employer "to discharge . . . or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of . . . age . . . or disability." Okla. Stat. Ann. tit. 25, § 1302(A)(1). "Because the protections provided by the OADA are co-extensive with the protections provided by federal law," "a plaintiff's OADA claim fails if her federal discrimination claims fail." *Hamilton v. Okla. City. Univ.*, 911 F. Supp. 2d 1199, 1206 (W.D. Okla. 2012) (internal quotation marks omitted).

As outlined above, Plaintiff has failed to sustain his summary-judgment burden as to his Rehab Act discriminatory termination and retaliation claims.  Accordingly, Plaintiff's OADA claims for discriminatory termination and retaliation on the basis of disability fail for the same reasons.

OAG's Motion does not directly address Plaintiff's OADA failure-to-accommodate claim or his OADA age-discrimination claim. *See* Def.'s Mot. Summ. J. at 33 (arguing only that "for the same reasons that the [Rehab Act] claims fail, Plaintiff's OADA claims should be dismissed").  Accordingly, OAG fails to show that the undisputed material facts require judgment as a matter of law in its favor on these claims.  *See Celotex Corp.*, 477 U.S. at 322; Fed. R. Civ. P. 56(a).

CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Partial Summary Judgment (Doc. No. 65) is DENIED.  Defendant's Motion for Summary Judgment (Doc. No. 66) is GRANTED IN PART and DENIED IN PART, as follows:

1.  Defendant is entitled to summary judgment on Plaintiff's Rehab Act and OADA claims for discriminatory termination and retaliation on the basis of disability;

2.  Defendant is not entitled to summary judgment on Plaintiff's Rehab Act and OADA claims for discriminatory failure to accommodate on the basis of disability; and

3.  Defendant is not entitled to summary judgment on Plaintiff's OADA age-discrimination claim.

Judgment shall be entered for Defendant on the relevant claims at the conclusion of this litigation.

IT IS SO ORDERED this 2nd day of May, 2022.

CHARLES B. GOODWIN
United States District Judge